USDC SCAN INDEX SHEET

















CAG 6/20/06 15:19

3:06-CV-00437 ANDIA V. CELEBRITY CRUISES

*3*

*AMDCMP.*

Howard Rubinstein (Fla. SBN: 104108)
Attorney at Law
2601 Bayshore Dr., Suite 600
Miami, Florida 33133
*(To apply as Counsel Pro Hac Vice)*

Harold M. Hewell, Esq. (Cal. SBN: 171210)
Hewell Law Firm, APC
1901 First Ave, Second Floor
San Diego, CA 92101
Tel: (619) 235-6854
Fax: (619)235-9122
E-mail: hmhewell@hewell-lawfirm.com

***Please direct all correspondence and service to Harold M. Hewell***

Attorneys for Plaintiff
**ANA MARIA ANDIA, M.D.**

FILED
06 JUN 19 AM 11:26
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**ANA MARIA ANDIA, M.D.**, an individual,

*Plaintiff,*

*vs.*

**FULL SERVICE TRAVEL**, a California corporation, **CELEBRITY CRUISES, INC.**, a foreign corporation, and **ARNOTT'S LODGE AND HIKE ADVENTURES**, a Hawaiian business of unknown structure,

*Defendants.*

Civil Action No.: **06-CV-0437 WQH JMA**

**FIRST AMENDED COMPLAINT BY ANA MARIA ANDIA, M.D. AGAINST FULL SERVICE TRAVEL, CELEBRITY CRUISES, INC. AND ARNOTT'S LODGE AND HIKE ADVENTURES FOR:**
**(1) NEGLIGENCE; AND**
**(2) FAILURE TO WARN**

***JURY TRIAL REQUESTED***

Plaintiff alleges:

## I. PLAINTIFF

1. This is an action for damages brought by plaintiff, Ana Maria Andia, M.D., against defendants, Full Service Travel, Celebrity Cruises, Inc., ("Celebrity") and Arnott's Lodge and Hike Adventures, ("Arnott's") for negligence. Dr. Andia is an individual who resides in San Diego, California. She respectfully requests a jury trial.

## II. DEFENDANTS

2. Celebrity is a foreign corporation. According to the records at the Division of Corporations, Florida Department of State, Celebrity is a foreign corporation with its principal place of business at 1050 Caribbean Way, Miami, Florida 33132. Celebrity is engaged in the business of providing passenger cruises to various destinations. Celebrity offers its cruise passengers destination tours through its "Celebrity Shore Excursions" service.

3. Plaintiff is informed and believes and thereon alleges that Arnott's is a Hawaiian business of unknown structure. Arnott's trade name is registered in Hawaii with the Hawaiian Department of Commerce and Consumer Affairs, where it is listed with a mailing address of 98 Apane Road, Hilo, Hawaii, 96720. Arnott's is a budget accommodation hostel and offers "hiking adventure excursions" according to the general information it has listed with the Hawaiian Department of Commerce and Consumer Affairs. Arnott's at all times relevant herein provided tours to Celebrity passengers through Celebrity's Shore Excursions service.

4. Full Service Travel is a California corporation. According to records at the California Secretary of State's website, Full Service Travel maintains its principal place of business at 520 West Valley Parkway, Suite A, Escondido, California 92025. Plaintiff is informed and believes, and thereon alleges, on the basis of information on the website maintained by America's Vacation Center ("AVC"), that AVC is a wholly owned subsidiary of Full Service Travel, and is based in San Diego, California. Plaintiff alleges on information and belief that at all times relevant herein AVC was acting as an agent for Full Service Travel and was acting within the purpose and scope of said agency for Full Service Travel with Full Service Travel's full and complete authorization and ratification of AVC's actions, and that Full Service Travel is fully

liable for and responsible for all of AVC's acts and/or omissions.

5. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants was the agent, servant and employee of each of the remaining defendants, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Plaintiff is further informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants' employees was the agent, servant and employee of each employee's respective employer, and at all times herein mentioned, each employee was acting within the purpose and scope of said agency and employment.

**III. VENUE AND JURISDICTION**

6. This Court has jurisdiction through diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1) and (2) because the parties are citizens of different states and/or a citizens of different states and a citizen of a foreign state, and the amount in controversy is greater than $75,000.00.

7. Venue is proper in this judicial district pursuant to 28 U.S.C.S. §1391(a)(3).

**IV. FACTUAL ALLEGATIONS**

8. Plaintiff repeats, realleges and incorporates by reference the allegations in all paragraphs above.

9. Dr. Andia, pursuant to an Internet solicitation and subsequent conversations with AVC personnel in Escondido, California, purchased from and through AVC a ticket for a Celebrity cruise from San Diego, California, to Hawaii that was to take place in November 2005.

10. On or about November 27, 2005, Dr. Andia signed up, through the Celebrity Shore Excursions service provided, to go that day on excursion HL 15, the Kilauea Lava Viewing Hike run by Arnott's.

11. Dr. Andia was given written information that the hike would likely be approximately four miles round trip, and that the group should be able to view flowing lava within about 1.5 hours after the excursion began. However, *on the way to the hike starting point*, the van driver told the hikers, including Dr. Andia, that the lava flow changed location from day to day, and on that particular day, it would take at least four hours to reach it. The driver further stated that he

would have preferred that the group have six hours to hike to the lava flow; to reach it in four would require a brisk hike. However, he also stated that there would be several opportunities for the hikers to turn back if it became too strenuous.

12. The brochure given to the participants in the van *on the way* to the hike start site indicated that some participants would have to turn back "alone or in a small group, before you reach the end of the marked trail. This trail is marked by little yellow reflective tabs glued down for the first part and by large orange cones placed about every three hundred yards, each visible from the other, further out."

13. Approximately 45 minutes into the hike, at the third of four "decision points," Dr. Andia decided to return to the ranger station because she had become concerned that the terrain was becoming increasingly steep, and she felt that the pace required to keep up with the group was unsafe for the terrain.

14. Unfortunately, the party had deviated from the trail and it was no longer marked by the yellow reflective tabs. Nor were there any large orange cones as asserted in the aforementioned brochure.

15. Dr. Andia requested that a guide be provided to accompany her back to the marked trail because she was concerned that she might become lost without the yellow reflective tabs and the orange cones to guide her back to the ranger station.

16. She was told that the group was *"short of guides"* and that it was not possible to provide one to accompany her back to the ranger station. She then asked if she could wait where she was for a guide to return with the others who might choose to turn around at the next "decision point." This also was refused.

17. Accordingly, Dr. Andia had no choice but to try and make it back to the ranger station accompanied by one other passenger from the ship. Not having been able to locate the marked trail, she was forced to make the best of it, stepping carefully over rocks and hoping the next turn in the road would reveal the safer trail. Approximately 15 to 30 minutes into the return hike, Dr. Andia twisted her left ankle, hitting her foot on a large lava rock. She fell to the ground, landing hard on both knees. As she stood up, she immediately felt a searing pain in her left foot when she

began trying to walk on the uneven ground. Her left foot also began swelling rapidly, her sneaker becoming an ever-tightening tourniquet with each agonizing step.

18. She recalled that the Arnott's brochure had advised hikers to familiarize themselves with the bright shirts and orange vests the guides wore. The brochure had also stated that the guides carry "professional communicators" with which to contact other rangers in case of an emergency.

19. There were no rangers or two-way radios in sight as Dr. Andia stumbled on in her search for the ranger station. Because of her throbbing foot she could not keep up with the other returning passenger, who soon left Dr. Andia behind and alone.

20. Finally, after traveling approximately *two hours* on the injured foot, Dr. Andia reached the ranger station. She discovered that the other passenger had notified the rangers that Dr. Andia was injured and that she had been left behind alone. Shockingly, the rangers made no attempt to search for Dr. Andia, because *when they contacted Arnott's guides still on the hike, they falsely told the rangers that Dr. Andia had rejoined the group and that there was no missing person.*

21. The ranger who aided Dr. Andia at the station wrote in his report that she should be seen at the Hilo emergency room, or by the ship's doctor. Since the hike had taken longer than the three hours represented in the Arnott's brochure, the representatives from Arnott's were focused only upon returning the passengers to the ship. Accordingly, Dr. Andia elected to be seen by the ship's physician.

22. On the trip back to the ship, Dr. Andia informed Arnott's van driver that she needed to keep her leg elevated, and asked him if she could occupy one of the seats behind him alone, or sit in the front with the driver so she could prop her leg on the dash. The driver refused both requests, saying he did not have enough room for her to take a seat behind him alone, and did not have time to clear the front seat for her.

23. When Dr. Andia saw the ship's physician, Dr. Jennifer Garcia, upon returning to the ship, Dr. Garcia became very upset. She stated that Arnott's had not followed protocol and that Dr. Andia should have been taken to the emergency room at Hilo, as the ship's facilities were

insufficient to handle an injury as extensive as the one Dr. Andia had suffered. Dr. Garcia took x-rays of Dr. Andia's left foot that revealed a displaced fracture of the distal portion of her fifth metatarsal bone.

24. The ship even lacked adult-sized crutches for Dr. Andia to use until the next day when the ship docked at Kona and she could visit a medical facility there. Dr. Garcia advised Dr. Andia to talk with the ship's chief concierge and the shore excursion director about her situation. Dr. Andia spent from 6:00 p.m. until 10:30 p.m. that night, Sunday, November 27, 2005, in the ship's medical clinic.

25. After leaving the clinic, Dr. Andia attempted to speak with the chief concierge and excursion director, but was told that neither one of them would be available to see her until the next day.

26. Upon arrival in Kona, Dr. Andia was advised that there were no orthopedic surgeons there to evaluate her fracture and recommend appropriate treatment. Dr. Andia had no choice but to cut her vacation short and fly back to San Diego for treatment on Tuesday, November 29, 2005.

27. Dr. Andia's injury has been far more severe that anticipated. She has suffered lengthy confinement to a wheel chair, has required and continues to require extensive treatment, is expected to suffer long-term problems with healing, and as a direct result of her injuries has been limited in her ability to return to her full-time duties as a hospital physician.

28. Well before Dr. Andia took her hike, Arnott's had been made aware of publicly aired complaints regarding the conduct of its lava hikes that closely parallel Dr. Andia's experience. Publication of this information included posting on an Internet travel site where David Arnott, on information and belief, the owner of Arnott's, attempted to defend his "bare bones" practices. Accordingly, the risks and harm that occurred to Dr. Andia was clearly foreseeable to defendants.

## V. FIRST CAUSE OF ACTION: NEGLIGENCE

## (AGAINST AVC)

29. Plaintiff repeats, realleges and incorporates by reference the allegations in all

paragraphs above.

30. AVC had a duty to disclose reasonably obtainable material information, such as the danger of the lava tours, which AVC promoted as part of the Celebrity travel options, to its travel clients such as Plaintiff. The dangers inherent in these tours, on information and belief, were known to and foreseeable to AVC.

31. AVC did not advise Dr. Andia of the danger of the lava tours, and by failing to do so, breached its duty to disclose such reasonably obtainable material information.

32. As a direct and proximate result of this breach, Dr. Andia suffered a fractured foot and other injuries while those responsible behaved indifferently to her pain and suffering, treating her as if she were a burden and ignoring her pleas for help.

33. As a further direct and proximate result of AVC's negligence, Dr. Andia suffered and continues to suffer, among other things, a fractured foot, extensive recovery and rehabilitation, permanent physical harm, severe physical and emotional pain and suffering, loss of income, inability to practice her profession fully, a shortened cruise, return costs, and other damages and harm.

## VI. SECOND CAUSE OF ACTION: NEGLIGENCE
## (AGAINST CELEBRITY)

34. Plaintiff repeats, realleges and incorporates by reference the allegations in all paragraphs above.

35. Celebrity, through its Celebrity Shore Excursions service, had a duty to disclose to Dr. Andia reasonably obtainable material information regarding the Kilauea Lava Viewing Hike run by Arnott's, such as the dangers of the tour, the dangerous "bare bones" staffing and operation of the tours, and the negative experiences of other parties who had undertaken the tours. The dangers inherent in these tours, on information and belief, were known and foreseeable to Celebrity. Celebrity also had a duty of care to offer through its Celebrity Shore Excursions service, excursions that were reasonably safe, well operated and properly run.

36. Celebrity breached its duty to Dr. Andia when, through its Shore Excursions director, it directed Dr. Andia to, and enrolled her in, Arnott's excursion HL 15, the Kilauea Lava

Viewing Hike, an unreasonably dangerous and poorly run and operated excursion, without the above disclosures.

37. As a direct and proximate result of these breaches, Dr. Andia suffered a fractured foot and was abandoned on the hike, forcing her to make her way back to the rangers' station alone, in anguish.

38. As a further direct and proximate result of Celebrity's negligence, Dr. Andia suffered and continues to suffer, among other things, a fractured foot, extensive recovery and rehabilitation, permanent physical harm, severe physical and emotional pain and suffering, loss of income, inability to practice her profession fully, a shortened cruise, return costs, and other damages and harm.

**VII. THIRD CAUSE OF ACTION: NEGLIGENCE**

**(AGAINST ARNOTT'S)**

39. Plaintiff repeats, realleges and incorporates herein by reference the allegations in all paragraphs above.

40. Arnott's owed its customers a duty of care to conduct safe, well-staffed and smoothly run hiking tours, and to take reasonable steps to ensure that those cruise ship customers who were forced to turn back were guided safely back to the rangers' station for rest and care until they were returned to the cruise ship. The dangers inherent in these tours were known and foreseeable to Arnott's.

41. Arnott's breached its duty to Dr. Andia when, among other things: it did not advise her of the changes in hiking conditions until after departure; while on its excursion HL 15, the Kilauea Lava Viewing Hike, it sent her back from the hike without a guide or other capable party to assist her; when it advised the rangers that she was not missing and did not need to be searched for; when it took her off the marked trail, and when it did not take her to the emergency room at Hilo.

42. As a direct and proximate result of this breach, Dr. Andia suffered a fractured foot and was abandoned, forcing her to make her way back to the rangers' station alone on the fractured foot.

43. As a further direct and proximate result of Arnott's negligence, Dr. Andia suffered and continues to suffer, among other things, a fractured foot, extensive recovery and rehabilitation, permanent harm, severe physical and emotional pain and suffering, loss of income, inability to practice her profession fully, a shortened cruise, return costs and other damages and harm.

## VIII. FOURTH CAUSE OF ACTION: FAILURE TO WARN
## (AGAINST AVC)

44. Plaintiff repeats, realleges and incorporates herein by reference the allegations of all paragraphs above.

45. The lava tours, at the time Dr. Andia made travel arrangements through AVC, were dangerous and unsafe, and posed an excessive risk of harm to parties who participated in them. Because of her relationship as a client of AVC, a professional travel service, Dr. Andia relied upon AVC to advise her regarding travel plans, and she trusted the travel advice she received from AVC.

46. Plaintiff is informed and believes, and thereon alleges, that AVC knew of the dangers associated with the lava tours, which AVC promoted as part of the Celebrity travel options. The potential dangers associated with those lava tours were serious and severe, and readily foreseeable given the public complaints published regarding them and AVC's position as a professional travel agency. Accordingly, AVC had a duty to warn Dr. Andia of the dangers of the lava tours it promoted.

47. Had Dr. Andia been properly warned by AVC of the dangers of the lava tours, she would not have taken one. However, as noted above, AVC failed to warn Dr. Andia of those dangers and risks.

48. As a direct and proximate result of this failure to warn, Dr. Andia took a tour and suffered a fractured foot and was abandoned, forcing her to make her way back to the rangers' station alone on the fractured foot.

49. As a further direct and proximate result of this failure to warn, Dr. Andia suffered and continues to suffer, among other things, a fractured foot, extensive recovery and rehabilitation,

permanent harm, severe physical and emotional pain and suffering, loss of income, inability to practice her profession fully, a shortened cruise, return costs and other damages and harm.

**IX. FIFTH CAUSE OF ACTION: FAILURE TO WARN**

**(AGAINST CELEBRITY)**

50. Plaintiff repeats, realleges and incorporates herein by reference the allegations of all paragraphs above.

51. The Kilauea Lava Viewing Hike offered by Arnott's, at the time Dr. Andia made plans to take it through Celebrity Shore Excursions service, was dangerous, inadequately staffed, and posed an excessive risk of harm to the parties who participated in it. Because of her relationship to Celebrity as a passenger and customer, and Celebrity's experience in the travel industry, Dr. Andia relied upon Celebrity, through its Celebrity Shore Excursions service, to advise her regarding shore excursions, and she trusted the advice, service and offerings made by Celebrity through its Celebrity Shore Excursions service.

52. Plaintiff is informed and believes, and thereon alleges, that at the time Dr. Andia made her plans through Celebrity Tour Excursions to take the Kilauea Lava Viewing Hike operated by Arnott's, Celebrity knew of the dangers associated with the hike. The potential dangers associated with the Kilauea Lava Viewing Hike were serious and severe, and readily foreseeable given the public complaints published regarding them and the relationship and experience Celebrity and its Celebrity Shore Excursions service had with Arnott's. Accordingly, Celebrity had a duty to warn Dr. Andia of the dangers of the Kilauea Lava Viewing Hike it arranged for her.

53. Had Dr. Andia been properly warned by Celebrity of the dangers of the Kilauea Lava Viewing Hike, she would not have taken one. However, Celebrity failed to warn Dr. Andia of those dangers and risks.

54. As a direct and proximate result of this failure to warn, Dr. Andia suffered a fractured foot and was abandoned, forcing her to make her way back to the rangers' station alone on the fractured foot.

55. As a further direct and proximate result of this failure to warn, Dr. Andia suffered and

continues to suffer, among other things, a fractured foot, extensive recovery and rehabilitation, permanent harm, severe physical and emotional pain and suffering, loss of income, inability to practice her profession fully, a shortened cruise, return costs and other damages and harm.

## X. SIXTH CAUSE OF ACTION: FAILURE TO WARN

## (AGAINST ARNOTT'S)

56. Plaintiff repeats, realleges and incorporates herein by reference the allegations of all paragraphs above.

57. Arnott's Kilauea Lava Viewing Hike, at the time Dr. Andia took the hike as a customer of Arnott's, was dangerous and unsafe, poorly staffed, and posed an excessive risk of harm to the parties who participated in it. Because of Arnott's holding itself out as a reputable tour service, Dr. Andia relied upon and trusted it to provide for her safety, needs and advice during the hike.

58. Plaintiff is informed and believes, and thereon alleges, that at the time Dr. Andia took Arnott's Kilauea Lava Viewing Hike, Arnott's knew of the dangers associated with the hike and the shortcomings of its operation in conducting the hike. The dangers associated with the Kilauea Lava Viewing Hike were serious and severe, and readily foreseeable given the public complaints published regarding them and, among other things, David Arnott's response to them. Accordingly, Arnott's had a duty to warn Dr. Andia of the dangers of the Kilauea Lava Viewing Hike it provided for her.

59. Had Dr. Andia been properly warned by Arnott's of the dangers of the Kilauea Lava Viewing Hike, she would not have taken one. However, Arnott's failed to warn Dr. Andia of those dangers and risks.

60. As a direct and proximate result of this failure to warn, Dr. Andia suffered a fractured foot and was abandoned, forcing her to make her way back to the rangers' station alone on the fractured foot.

61. As a further direct and proximate result of this failure to warn, Dr. Andia suffered and continues to suffer, among other things, a fractured foot, extensive recovery and rehabilitation, permanent harm, severe physical and emotional pain and suffering, loss of income, inability to

practice her profession fully, a shortened cruise, return costs and other damages and harm.

62. Plaintiff is informed and believes and thereon alleges that Arnott's knew that its Kilauea Lava Viewing Hike was unsafe, unreasonably dangerous, inadequately staffed, lacked reasonable safeguards, and was a "bare bones" operation which could not be safely undertaken by individuals such as Dr. Andia, and that even so, despicably and in willful and conscious disregard of the safety of Dr. Andia and others, took her on the tour without warning her of the risks and shortcomings of the operation as set forth above.

63. Plaintiff, in taking the tour as herein alleged, relied on Arnott's, all to her damage as hereinabove alleged. In doing the things aforementioned, Arnott's was guilty of malice, oppression, and fraud, and Dr. Andia is, therefore, entitled to recover exemplary or punitive damages.

## II. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief from Full Service Travel for the First Cause of Action for Negligence as follows:

1. For actual damages in an amount to be determined at trial;
2. For special damages in an amount to be determined at trial;
3. For costs of suit; and
4. For any other and further relief as the court may deem proper.

WHEREFORE, Plaintiff prays for relief from Celebrity for the Second Cause of Action for Negligence as follows:

1. For actual damages in an amount to be determined at trial;
2. For special damages in an amount to be determined at trial;
3. For costs of suit; and
4. For any other and further relief as the court may deem proper.

WHEREFORE, Plaintiffs pray for relief from Arnott's for the Third Cause of Action for Negligence as follows:

1. For actual damages in an amount to be determined at trial;
2. For special damages in an amount to be determined at trial;
3. For costs of suit; and

4. For any other and further relief as the court may deem proper.

WHEREFORE, Plaintiff prays judgment against Full Service Travel for the fourth cause of action as follows:

1. For actual damages in an amount to be determined at trial;

2. For special damages in an amount to be determined at trial;

3. For attorneys' fees and costs of suit herein incurred; and

4. For such other and further relief as the Court may deem proper.

WHEREFORE, Plaintiff prays judgment against Celebrity for the fifth cause of action as follows:

1. For actual damages in an amount to be determined at trial;

2. For special damages in an amount to be determined at trial;

3. For attorneys' fees and costs of suit herein incurred; and

4. For such other and further relief as the Court may deem proper

WHEREFORE, Plaintiff prays judgment against Arnott's for the sixth cause of action as follows:

1. For actual damages in an amount to be determined at trial;

2. For special damages in an amount to be determined at trial;

3. For punitive damages;

4. For attorneys' fees and costs of suit herein incurred; and

5. For such other and further relief as the Court may deem proper

DATED: Friday, June 16, 2006

HEWELL LAW FIRM, APC

By: ______________________

Harold M. Hewell
Attorney for Plaintiff