1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  ANA MARIA ANDIA, M.D., | CASE NO. 06cv0437 WQH (JMA) |
| 12                         Plaintiff, | **ORDER** |
|          vs. | |
| 13  FULL SERVICE TRAVEL, a California | |
|     corporation, CELEBRITY CRUISES, | |
| 14  INC., a foreign corporation, and | |
|     ARNOTT'S LODGE AND HIKE | |
| 15  ADVENTURES, a Hawaiian business of | |
|     unknown structure, | |
| 16 | |
| 17                         Defendants. | |

HAYES, Judge:

    The matter before the Court is Defendants' Motion for Summary Judgment, filed by
Celebrity Cruises, Inc. and Arnott's Lodge and Hike Adventures.  (Doc. # 40).

                                    **Background**

    Defendant Celebrity Cruises, Inc. ("Celebrity") is engaged in the business of
providing passenger cruises to various destinations.[1]  *UMF* 1.  Arnott's Lodge and Hike
Adventures ("Arnott's") guides transport cruise ship passengers to Volcanoes National
Park ("the Park"), and provide knowledge about where the lava flow is each day.  *UMF* 3.

---

[1] The parties each submitted a statement of facts with their submissions in support of and in
opposition to the Motion for Summary Judgment.  The Court relies upon the facts from Defendants'
Alleged Undisputed Material Facts ("UMF"), which are undisputed by Plaintiff and supported by the
cited evidence, and the facts from Plaintiff's Disputed Material Facts ("DMF"), which are undisputed
by Defendants and supported by the cited evidence.

In order to view the active lava flow, individuals must hike over cooled lava.  This terrain is rugged and natural, consisting of uneven surfaces.  *Id.* at 4; *DMF* 4.  The Hawaii Volcanoes National Park Rangers ("Rangers") place reflective markers and cones on the lava to be used by hikers as reference points.  *UMF* 7.

In November, 2005, Plaintiff Ana Maria Andia, M.D. was a passenger on Defendant Celebrity Cruises, Inc.'s ("Celebrity") passenger cruise ship.  Plaintiff is an experienced hiker.  *Andia Depo,* 35: 23-25.  On November 27, 2005, Plaintiff signed up to participate in a shore expedition known as the HL 15, the Kilauea Lava Viewing Hike, guided by Arnott's.  *UMF* 8.  On November 27, 2005, there was total visibility for many miles in every direction.  *Id.* at 5.

Prior to beginning the hike, Plaintiff read the description of the hike that states: "This tour involves approximately two to six miles of hiking over very sharp and uneven surfaces."  *Id.* at 10.  Plaintiff also read, understood and executed the "Lava Hike Participant, Release and Acknowledgment of Risk" ("Agreement"), which provides, in relevant part:

> I agree not to hold Arnott's liable for any accident or injury beyond its control. The hike to the Lava is conducted at a brisk pace and requires physically fit participants in good health who can readily hike on varied surfaces and elevation changes for extended periods.  I, as a participant, acknowledge that I am taking this activity of my own free will and that I will not hold Arnott's responsible for any injury incurred while . . . I am hiking on the paved or natural surfaces of the National Park . . . .  I understand by reading this waiver that Arnott's guides will provide only broad direction and safety guidelines and that I remain responsible for the actual path hiked and whether I choose to take the risks with possibly still hot Lava Flows.

*Id.* at 11.  Plaintiff also received and read a document entitled "Arnotts Adventures proudly presents: The Kilauea Lava Hike Adventure" ("Brochure"), which informed Plaintiff that she may need to turn around and head back to the Rangers station alone, and that she did not need a trail to return safely.  *Id.* at 14.

Prior to beginning the hike, Arnott's informed Plaintiff that the lava flow had changed and that the hike was going to be longer than anticipated for that day.  *Id.* at 13. Arnott's also informed all participants in the hike, including Plaintiff, that they had the option of staying at the Rangers station and not going on the hike, and that there would be

four decision points during the hike at which hikers could turn around and head back to the Rangers station. *Id.* at 13, 18.

Prior to beginning the hike, Plaintiff understood that the marked trail was merely a preferred route, and that the trail was not necessary to safely return to the Rangers station. *UMF* 15; *Andia Depo,* 63:1-15.  Plaintiff also understood that guides would not stay with her during the hike and that she might be returning to the Rangers station unaccompanied. *UMF* 15, 16; *Andia Depo,* 63: 1-15*,* 64:22-24.  Plaintiff understood that the hike would be difficult and strenuous.  *Andia Depo,* 52: 17-19

For the first 30 minutes of the hike, and through the first two decision points, the hike proceeded on paved surfaces.  *UMF* 20.  During this period, Plaintiff recalls seeing reflective tabs on the paved surface.  *Id.*  Plaintiff's companion recalls seeing reflective tabs stuck to the rocks for 10-15 minutes of the hike after leaving the paved road.  Plaintiff does not recall whether or not the reflective tabs were stuck to the rocks.  *Id.* at 21. Approximately 45 minutes into the hike, and after approximately 15 minutes of walking on unpaved terrain, Plaintiff decided to return, unaccompanied by a guide, to the Rangers station.  *Id.* at 22.  About 15 minutes into her return, Plaintiff slipped on one of the rocks. When Plaintiff slipped, she twisted her ankle.  Plaintiff then lifted her foot up, and hit the top of her foot on the lava rock.  As a result of these events, Plaintiff fractured her foot.  *Id.* at 23.  Plaintiff testified that she then proceeded back to the Rangers station.  *Andia Depo,* 86:22-87:14.  The fall itself could have caused the fracture to become displaced and surgery may have been required regardless of whether Plaintiff attempted to walk out of the lava fields.  *UMF* 25.  Plaintiff was given the option of going to the ship's doctor or the Hilo emergency room for treatment, and Plaintiff elected to receive treatment with the ship's doctor.  *Id.* at 24; *Andia Depo,* 89:15-25; 90:1-10.  Plaintiff testified that, as a result of the fracture, she was confined to a wheel chair for a period of months, had to take time off of work, and suffers impaired balance.  *Id.* 15:13-14.

On February 24, 2006, Plaintiff filed the First Amendment Complaint ("FAC") against Defendants Full Service Travel,[2] Celebrity and Arnott's.  (Doc. # 3).  The FAC alleges causes of action against Arnott's for (1) negligence, on grounds that Arnott's breached its duty of care to Plaintiff by failing to ensure the safety of participants in their excursions, and (2) negligence, on grounds that Arnott's failed to warn Plaintiff of the known dangers and risks associated with the lava hike.  The FAC alleges causes of action against Celebrity for (1) negligence, on grounds that Celebrity breached its duty of care to Plaintiff by failing to to offer reasonably reliable and safe excursions, and (2) negligence, on grounds that Celebrity failed to warn Plaintiff of the dangers and risks associated with the lava hike.

On August 18, 2007, Defendants filed the Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Defendants claim they are entitled to judgment as a matter of law because (1) Arnott's owed Plaintiff no duty to protect Plaintiff against the assumed risk of slipping and falling on the lava rock, (2) Arnott's owed Plaintiff no duty to warn Plaintiff of the obvious risk of injury of slipping and falling on the lava rock, (3) Celebrity did not owe Plaintiff a duty to warn of the obvious risk of slipping and falling on lava rock, (4) the alleged negligence of Defendants did not cause Plaintiff's injuries, and (5) the claim for punitive damages against Arnott's is not warranted.  After receiving evidence and briefing from the parties, the Court heard oral argument on November 9, 2007.

**Standard of Review**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *See Anderson v. Liberty*

_____

[2] On October 5, 2006, Defendant Full Service Travel was dismissed from the case, with prejudice.

1     *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is genuine if "the

2     evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

3        A party seeking summary judgment always bears the initial burden of establishing

4     the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  If the

5     moving party satisfies its initial burden, the nonmoving party must "go beyond the

6     pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and

7     admissions on file, designate specific facts showing that there is a genuine issue for trial."

8     *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

9        In ruling on a motion for summary judgment, the Court must view all inferences

10     drawn from the underlying facts in the light most favorable to the nonmoving party.  *See*

11     *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

12     "Credibility determinations [and] the weighing of evidence . . . are jury functions, not those

13     of a judge, [when] he is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at

14     255.

15                              **<u>Choice of Law</u>**

16        The Court has jurisdiction over this action through diversity of citizenship, 28 U.S.C.

17     section 1331.  Federal courts exercising diversity jurisdiction must apply the substantive law of the

18     state in which they are located, except on matters governed by the United States Constitution or

19     federal statutes, or on procedural issues.  *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78 (1938).

20     The Complaint alleges causes of action in negligence for breach of due care and for failure to

21     warn.  The elements of the tort of negligence are essentially identical under California and Hawaii

22     law.  *See White v. Sabatino,* 415 F. Supp. 2d 1163, 1173 (USDC Haw. 2006); *Ladd v. County of*

23     *San Mateo,* 12 Cal. 4th 913, 917 (1996).  Furthermore, the doctrine of primary assumption of risk

24     is a measure of a defendant's duty of care, and is essentially identical under both Hawaii and

25     California law.  *Yoneda v. Andrew Tom,* 110 Haw. 367, 279 (2006); *Knight v. Jewett,* 3 Cal. 4th

26     296, 314-15 (1992).

27

28

**Discussion**

**I. Plaintiff's Claims Against Arnott's**

Arnott's contends that the risk of slipping, falling and injuring oneself on uneven, natural terrain is an inherent risk of lava hiking. Arnott's contends that without this risk, the means of viewing this natural phenomenon would be severely limited to the general public. Arnott's also contends that the evidence is uncontroverted that Arnott's provided Plaintiff with written disclosures concerning the condition of the terrain, that guides would only give broad direction on the actual hike, that Plaintiff may need to turn around and head to the Rangers station alone, and that Plaintiff did not need a trail to return safely. Arnott's contends that there is no triable issue of fact as to whether Arnott's is liable for breach of its duty of care because the doctrine of primary assumption of risk applies, negating any duty of Arnott's to protect Plaintiff against the inherent risk of slipping and falling while lava hiking. Arnott's contends that Plaintiff has failed to assert facts or introduce any evidence that demonstrates that the conduct of Arnott's was totally outside the range of ordinary activity or that the conduct of Arnott's increased Plaintiff's risk of slipping and falling on the lava rock. Arnott's also contends that there is no triable issue of fact as to whether Arnott's is liable to Plaintiff for breach of the duty of Arnott's to warn because the risk of slipping and falling on the natural terrain was equally obvious to Plaintiff and Arnott's.

Plaintiff responds that the conduct of Arnott's constituted gross negligence for the following reasons: Arnott's did nothing to provide for Plaintiff's safety on the lava hike once she determined she could not go forward; Arnott's did nothing to warn Plaintiff of the dangers of approaching too closely to the coastline; Arnott's did not ensure Plaintiff had sufficient water for her trip back to the Rangers station; Arnott's was understaffed; Arnott's failed to follow protocol by pressuring Plaintiff to return to the ship rather than obtain treatment at the Hilo emergency room; Arnott's offered misleading information about the trail markings; Arnott's provided Plaintiff with falsely reassuring directions back to the Rangers station; and Arnott's permitted Plaintiff to hike in sneakers instead of boots.

Plaintiff contends that this conduct constituted gross negligence, making the Agreement, which purports to exculpate Arnott's of liability, unenforceable. Plaintiff also contends that the Agreement is an unconscionable and unenforceable contract of adhesion because it is a pre-printed form, contained multiple signatures and there was no alternative for Plaintiff but to sign it or wait at the Rangers station while the others hiked, losing a day of her cruise vacation.[3]

A. Duty of Care

As a general rule, persons have a duty to use due care and avoid injury to others, and may be held liable if their careless conduct injures another person. Cal. Civ. Code § 1714. The doctrine of primary assumption of the risk is an exception to this general rule. *Knight v. Jewett,* 3 Cal. 4th 296 (1992). The doctrine arises where "by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury." *Id.* at 315. Whether the doctrine of assumption of risk applies, thereby negating a duty of care, turns on the "nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport." *Id.* at 309. In reviewing the nature of the activity, the doctrine of primary assumption of risk applies where "conditions or conduct that otherwise might be viewed as dangerous often are an integral part" of the activity itself. *Id.* at 315. "The overriding consideration in the application of primary assumption of risk is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature." *Ferrari v. Grand Canyon Dories,* 32 Cal. App. 4th 248, 253 (1995).

If the doctrine of primary assumption of risk applies, a defendant is only liable for a plaintiff's injuries if the defendant "engages in conduct so reckless as to be totally outside

---

[3] Plaintiff does not dispute that the doctrine of primary assumption of risk applies, negating Arnott's' duty to prevent Plaintiff from slipping and falling on lava rock. Instead, Plaintiff relies solely on her contention that the Agreement itself is either an unenforceable exculpatory agreement or an unenforceable contract of adhesion. Defendants, however, do "not contend, nor have they even asserted, that the [Agreement] relieves them from liability for any alleged negligence, nor gross negligence." *Reply,* p. 1-2.

the range of the ordinary activity involved in the sport or activity" or increases the inherent risk involved in the activity. *Saville v. Sierra College,* 133 Cal. App. 4th 857, 866 (4th Dist. 2005); *Kane v. National Ski Patrol,* 88 Cal. App. 4th 204, 209 (4th Dist. 2001). The relationship between an instructor and student is instructive on the issue of whether the Arnott's guides engaged in reckless conduct or increased the inherent risk involved in lava hiking. *Kane,* for example, involved candidates for a voluntary ski patrol who participated in a skills clinic instructed by Larry Stone, a National Ski Patrol System ("NSPS") instructor. 88 Cal. App. 4th at 207. Stone led the clinic participants to the most difficult terrain at the resort. When the participants were reluctant to proceed through a portion of the trail, which was icy and spotted with trees, rocks and stumps, Stone asked the clinic participants what they would do "if there was a skier over the side?" *Id.* at 208. Although both plaintiffs felt uncomfortable with continuing down the terrain, they carried on, following Stone's direction. *Id.* One plaintiff ultimately caught an "edge" with his ski, causing him to fall to his death, and the other plaintiff fell and suffered a broken leg. *Id.* The court granted summary judgment in favor of the defendant, holding that the doctrine of primary assumption of risk applied, negating the defendant's duty of care. The court reasoned that "an instructor's assessment errors - either in making the necessarily subjective judgment of skill level or the equally subjective judgment about the difficulty of the conditions - are in no way 'outside the range of the ordinary activity involved in the sport." *Id.* at 214.

Plaintiff admits that she is an experienced hiker. *Andia Depo*, 35:23-25. Plaintiff admits that falling is always a risk when engaging in any kind of strenuous hike on steep and uneven terrain. *Id.* at 153:8-14. Plaintiff admits that prior to starting the hike she was aware that she would be hiking over "very sharp and uneven surfaces." *Id.* at 51:8-13. Plaintiff does not introduce any evidence to refute that hiking across uneven and challenging natural terrain is an inherent risk of hiking to active lava flow, without which the general public would be substantially deprived of viewing this natural phenomenon. The Court concludes that the doctrine of primary assumption of risk applies, negating

1    Arnott's general duty to prevent Plaintiff from slipping and falling on lava rock, an inherent

2    risk of the activity of lava hiking.

3           Plaintiff admits that, prior to the hike, Arnott's provided the following written

4    disclosures, which she understood: that the natural terrain was uneven and challenging; that

5    during the hike she would be responsible for the path she traveled; that the guides would

6    give only broad direction; that she may have to return to the Rangers station alone; and that

7    the trail was merely a preferred route, and not necessary to safely get back to the Rangers

8    station.  Despite these disclosures, Plaintiff asserts that the decision to allow Plaintiff to

9    return to the Rangers station alone and subsequent conduct on the part of the Arnott's

10   guides constituted gross negligence.  The Court finds that the decision to allow Plaintiff to

11   return alone and subsequent conduct on the part of Arnott's guides at most constituted

12   "assessment errors," but these "subjective judgment[s] about the difficulty of the

13   condition[s]," were "in no way so reckless as to be totally outside the range of the ordinary

14   activity involved" in the activity of lava hiking.  *See Kane,* 88 Cal. App. 4th at 214.

15   Plaintiff emphasizes that Arnott's' conduct, such as permitting her to participate in the hike

16   wearing sneakers instead of hiking boots, was grossly negligent.  However, the Court finds

17   that there is no evidence in the record to support Plaintiff's conclusion that Arnott's

18   conduct, including permitting Plaintiff to wear improper footwear, hike over thin lava crust,

19   return to the Rangers station alone and without sufficient water, or return to the ship instead

20   of going to the Hilo emergency room, increased the risk of Plaintiff's injury.  The Court

21   concludes that there is no triable issue of fact as to whether Arnott's conduct was so

22   reckless as to be totally outside the range of the ordinary activity or otherwise increased the

23   inherent risk involved in the activity of lava hiking.

24          The Court grants summary judgment on Plaintiff's negligence claim against Arnott's

25   for breach of duty of care.

26          B. Duty to Warn

27          "It is established law, at least in the exercise of ordinary care, that one is under no

28   duty to warn another of a danger equally obvious to both."  *Marshall v. United Airlines,* 35

1   Cal. App. 3d 84, 90 (1973).

2       Plaintiff admits she is an experienced hiker, that she was aware that falling is always

3   a risk involved in any kind of hike on steep and uneven terrain, that she knew that the

4   terrain she would cover during the lava hike was rugged and uneven, and that she read the

5   Agreement and the Brochure, which both emphasize the strenuous nature of the hike, the

6   possibility that Plaintiff would have to return to the Rangers station alone and nature of the

7   terrain.  Viewing the facts in the light most favorable to Plaintiff, the Court finds that

8   Plaintiff has failed to offer any evidence to demonstrate that the risk of slipping and falling

9   on lava rock was any less obvious to Plaintiff than it was to Arnott's.  The Court grants

10  summary judgment on Plaintiff's negligence claim against Arnott's for failure to warn.

11  **II. Plaintiff's Claims Against Celebrity**

12      Celebrity contends that although Plaintiff alleges separate causes of action in

13  negligence for breach of due care and for failure to warn, both of these claims allege only

14  failure to warn.  Celebrity contends that it had no duty to warn Plaintiff of the risk of

15  slipping and falling on lava rock during a hike through a lava field because the risk was

16  patently obvious and equally apparent to Plaintiff and Celebrity.

17      Plaintiff's Response in Opposition to the Motion for Summary Judgment on all of

18  Plaintiff's claims against Celebrity states in full:

19      [P]laintiff relied on Celebrity to provide her with reasonably safe shore
        excursions.  The dangers of the lava hike with Arnott's were not readily
20      apparent to her or anyone else who had not taken the hike.  Celebrity's reliance
        on *Deroche* is misplaced.
21
22      This was not a scooter ride, which a reasonable person knows poses obvious
        dangers.  It was a hike to a uniquely dangerous place.  [Plaintiff] reasonably
23      relied on Celebrity to exercise due care in providing her with a safe guide
        service, and in offering a potentially life-threatening venture.  Celebrity had a
24      duty to ensure that Arnott's was a reasonable safe and reliable service.  Celebrity
        is liable for breach of that duty.

25
26  *Opposition,* p. 19-20.

27      A. Duty of Care

28      The duty of care of the owner of an excursion ship is a matter of federal maritime

    law.  *DeRoche v. Commodore Cruise Line, Ltd.,* 31 Cal. App. 4th 802, 807 (1994).  "That

1    duty is to exercise reasonable care under the circumstances." *Id.* at 807-8.

2           Plaintiff fails to introduce any evidence to support her claim that Celebrity did not

3    exercise due care when it enrolled Plaintiff in "excursion HL 15, the Kilauea Lava Viewing

4    Hike, an unreasonably dangerous and poorly run and operated excursion." *See FAC,* ¶ 35-

5    36.  Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff

6    has failed introduce any evidence demonstrating Celebrity breached its duty of due care to

7    Plaintiff.  The Court grants summary judgment on Plaintiff's negligence claim against

8    Celebrity for breach of duty of care.

9           B. Duty to Warn

10          "[I]t is generally accepted that where a carrier . . . has a continuing obligation for the

11   care of its passengers, its duty is to warn of dangers known to the carrier in places where

12   the passenger is invited to, or may reasonably be expected to visit." *DeRoche,* 31 Cal. App.

13   4th at 809.  However, "there is no duty to warn of a danger that is as obvious to the injured

14   party as to the defendant." *Id.* at 810.

15          As previously discussed, Plaintiff admits she is an experienced hiker, that she was

16   aware that falling is a risk involved in any kind of hike on steep and uneven terrain, that she

17   knew that the terrain she would cover for the lava hike was rugged and uneven, and that she

18   read the Agreement and the Brochure, which both emphasize the strenuous nature of the

19   hike, the challenging nature of the terrain and the possibility that Plaintiff would have to

20   return to the Rangers station alone.  Viewing the facts in the light most favorable to

21   Plaintiff, the Court finds that Plaintiff has failed offer any evidence that demonstrates the

22   risk of falling on lava rock was any less obvious to her than it was to Celebrity.  The Court

23   grants summary judgment on Plaintiff's negligence claim against Celebrity for failure to

24   warn.

25

26

27

28

1

## <u>Conclusion</u>

2          Defendants' Motion for Summary Judgment, filed by Celebrity Cruises, Inc. and

3   Arnott's Lodge and Hike Adventures (Doc. # 40) is **GRANTED.**  The Court directs the

4   Clerk of the Court to enter **JUDGMENT** for Defendants and against Plaintiff.

5   DATED:  November 29, 2007

6

7                                                      **WILLIAM Q. HAYES**
                                                      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28